**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

\-------------------------------------------------------------X

ARTURO RUVALCABA as Administrator
*Ad Prosequendum* and Administrator of the
Estate of MARCO JEANCARL SANTIAGO          **MEMORANDUM AND ORDER**
CERVANTES, deceased,                                         21-CV-06162 (OEM) (TAM)

               Plaintiff,

                    -against-

M.N.C. GENERAL CONTRACTORS CORP.,
and 3428 BEDFORD LLC,

                    Defendants,

\-------------------------------------------------------------X

3428 BEDFORD LLC,

               Third-Party Plaintiff,

                    -against-

RVM CARPENTRY INC.,

               Third-Party Defendant.

\-------------------------------------------------------------X

M.N.C. GENERAL CONTRACTORS CORP,

               Third-Party Plaintiff,

                    -against-

RVM CARPENTRY INC.,

               Third-Party Defendant.

\-------------------------------------------------------------X

**ORELIA E. MERCHANT, United States District Judge:**

      Arturo Ruvalcaba ("Plaintiff"), administrator of Marco Jeancarlo Cervantes' estate,

commenced this wrongful death action against Defendants 3428 Bedford LLC ("Bedford LLC" or

"Bedford"), owner of certain property in Brooklyn, New York, and M.N.C. General Contractors Corp. ("MNC"), general contractor for construction taking place at the property, under New York Labor Law ("NYLL") §§ 240(1), 241(6), and 200, in addition to common law negligence claims, arising out of injuries Cervantes sustained while working at the property, that caused his death. Complaint[1], ECF 1 ("Compl.").   In turn, Bedford and MNC have asserted claims against RVM Carpentry, Inc. ("RVM"), the subcontractor who hired Cervantes.

Plaintiff invokes this Court's jurisdiction pursuant to diversity jurisdiction 28 U.S.C. § 1332, alleging that on November 11, 2019, Cervantes fell two stories (26 feet), through an unfinished stairwell, and subsequently died from injuries related to his fall.  *Id.*  Before the Court are Plaintiff's Motion for Summary Judgment ("Pl.'s Mot. Summ. J."), ECF 61-1, Bedford LLC's Memorandum in Support of its Motion for Summary Judgment ("Bedford's Mot. Summ. J."), ECF 63-17, and M.N.C. General Contractors Corp.'s Memorandum in Support of Memorandum of Law ("MNC's Mem. In Supp. of Mot. Summ. J."), ECF 62-2.

For the reasons set forth below, Plaintiff's summary judgment motion is **DENIED**, MNC's summary judgment motion is **GRANTED in part** and **DENIED in part**, and Bedford's motion for summary judgment is **GRANTED in part** and **DENIED in part**.

---

[1] The complaint is unverified and therefore cannot be considered as evidence at summary judgment but the Court will draw facts from it for context.  *See Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, 07-CV-3635, 2009 WL 1564144, at *1 n.1 (S.D.N.Y. Jun. 4, 2009) (finding that on a motion for summary judgment "allegations in an unverified complaint cannot be considered as evidence." (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995))).

# BACKGROUND[2]

## A. The Parties

On Monday, November 11, 2019, Marco Jeancarlo Cervantes ("Cervantes"), a 27-year-old citizen and resident of Mexico, while visiting the United States and working temporarily at a construction site owned by Bedford LLC, fell through a hole and subsequently died from his injuries. *See generally*, Bedford LLC's Rule 56.1 Statement of Undisputed Facts ("Bedford's 56.1"), ECF 63-16. While visiting the United States, Cervantes was staying at friend Arturo Ruvalcaba's ("Plaintiff's") apartment in New Jersey. *Id.* ¶ 2. Cervantes had been in the country for about three weeks at the time of his death. *Id.* ¶ 3.

Bedford LLC purchased five lots of land and hired MNC as a general contractor to build a single-family home at 3428 Bedford Avenue, Brooklyn, New York (the "Property"). *Id.* ¶ 9. Sometime in 2018 or 2019, construction of a large, single-family home for Ralph and Judy Herzka began. *Id.* ¶ 13; 44. Construction continued through 2022. *Id.* ¶ 45.

The Property does not generate any income for Bedford LLC. Bedford's Mem. Supp. Mot. Summ. J. at 5. Plaintiff concedes that Bedford LLC did not direct or control the work being done at the Property. Pl.'s Mot. Summ. J. at 23.

MNC was hired as the general contractor for the Property. Defendant MNC Counter Response to Plaintiff's Rule 56.1 Statement ("MNC Counter Response to Pl.'s 56.1"), ECF 71-3, ¶ 66-67. MNC in turn hired RVM Carpentry, Inc. ("RVM"), a company owned by Victor Perez, to "frame the home" on the Property. *Id.* ¶¶ 23-29; 71-72.

---

[2] Unless stated otherwise, all facts in this section are undisputed. *See* MNC's Memorandum in Opposition ("MNC Mem. in Opp."), ECF 70; Bedford's Mot. Summ. J.; MNC's Declaration in Opposition to Plaintiff's Motion for Summary Judgment ("MNC Decl. in Opp."), ECF 71; MNC's Reply in Support of Motion for Summary Judgment ("MNC's Reply"), ECF 72; Bedford's Reply to Plaintiff in Support of Motion for Summary Judgment ("Bedford's Reply to Pl."), ECF 73; Bedford's Reply to MNC in Support of Motion for Summary Judgment ("Bedford's Reply to MNC"), ECF 74; Plaintiff's Rule 56.1 Statement of Facts ("Pl.'s 56.1"), ECF 48.

Kemon Fortune ("Fortune") worked for MNC as the Property's project supervisor. Defendant MNC's Counter Response to Defendant RVM's Statement of Additional Material Facts ("MNC Counter Response to RVM's Stat."), ECF 72-1 ¶ 47, 79. Fortune performed walk-throughs of the site every morning, various times throughout the day, and at the end of each day. *Id*. ¶ 51. Fortune has worked for MNC for eight years. MNC Counter Response to Pl.'s 56.1 ¶ 78.

As general contractor, MNC's overall supervision of the project included the exercise of "stop work authority," meaning that in the presence of a dangerous condition, MNC could order all construction to halt until the hazard was corrected or remediated. MNC Counter Response to Pl.'s 56.1 ¶ 80. Fortune had previously exercised stop work authority at the Property, including stopping construction to ensure fall hazards, such as uncovered openings lacking guardrails, were addressed and made safe. *Id.* ¶¶ 81-82.

MNC received over 10 million dollars for its work as general contractor. Pl.'s 56.1 ¶ 77.

## B. Cervantes' Employment

Perez hired Cervantes to clean the construction site while RVM framed the Property for MNC. *Id.* Cervantes had no prior experience working in construction. *Id.* ¶ 24. Cervantes' duties were to work at the Property "picking up wood" and "loose pieces of wood or metal" and "remov[ing] debris from the site." *Id.* ¶ 29.

On November 8, 2019, the Friday prior to the accident, MNC provided Cervantes with an orientation, which lasted no more than 15 minutes. *Id.* ¶¶ 32-33. That Sunday, November 10, RVM workers and MNC's project manager, Fortune, were present on the second floor of the Property. Bedford's 56.1 ¶ 53.

### C.  The Accident

The morning of Monday, November 11, 2019, the day of Cervantes' accident, the Property was an active construction site.  *Id.* ¶ 6.  Cervantes had just begun his first day of work and was lifting and stacking sheets of plywood on the second-floor deck as part of his cleanup work.  MNC Counter Response to Pl.'s 56.1 ¶ 99.

At approximately 7:50 a.m., Cervantes removed another large piece of plywood.  *See* Bedford's 56.1 ¶ 32.  That wood was not just a piece of "debris", but the final piece of plywood placed over part of the second-floor decking and framing, covering a hole in the floor.  *See* MNC's Rule 56.1 Statement of Material Facts ("MNC's 56.1"), ECF 62-3, ¶¶ 15-17.  The plywood was placed there the workday prior to the accident.  *Id.* ¶ 13.  The piece of plywood was 4 feet by 8 feet.  Pl.'s 56.1 ¶ 100.  When Cervantes removed the piece of plywood, he exposed a large, approximately eight (8) by four (4) foot, hole in the floor.  MNC Counter Response to Pl.'s 56.1 ¶¶ 97-100; Pl.'s 56.1 ¶ 101.  The hole was created in preparation for the construction of a new stairway.  Pl.'s 56.1 ¶ 91.  As he begun to lift the plywood board, Cervantes slipped and fell into the hole, falling two stories (26 feet) from the second story to the basement.  MNC Counter Response to Pl.'s 56.1 ¶¶ 17-18; 98.  The injuries Cervantes suffered on impact caused his death.  Pl.'s 56.1 at 2.

Cervantes was pronounced dead on Monday, November 11, 2019, at 11:52 a.m., in the Kings County Hospital.  MNC Counter Response to Pl.'s 56.1 ¶¶ 1, 3.  His cause of death was listed as "blunt force injuries of head and torso."  *Id.* ¶ 2.

No one from MNC was present on the Property at the time of the fall.  MNC's 56.1 ¶ 2. After the accident, Fortune received a call informing him of the fall.  *Id.* ¶ 3.  There was a camera

system installed at the site, MNC Counter Response to Pl.'s 56.1 ¶ 11, and the accident was captured on video.[3]   MNC's 56.1 ¶ 1.

There were no guardrails around the opening when Cervantes fell, and Cervantes was not wearing a harness at the time of the fall.   MNC Counter Response to Pl.'s 56.1 ¶ 102; Bedford's 56.1 ¶ 33.   Around twenty minutes after the fall, guardrails were installed around each side of the rectangular opening.  *Id.* ¶ 106.

The parties dispute whether the plywood was secured.  Bedford's Reply to MNC's Rule 56.1 Statement of Additional Facts ("Bedford's Reply to MNC's 56.1 Add. Facts"), ECF 74-1 at 2.  MNC enforced a rule at the Property that whenever a hole exposure was covered with a piece of plywood, the word "hole" had to be marked on it (in English and Spanish), and the workers had to be made aware that there was a hole under the plywood.  MNC Counter Response to Pl.'s 56.1 ¶¶ 124-26.

Following the accident, MNC was issued a citation from the Department of Buildings for violating Building Code 3301.2 of the New York City Administrative Code, which reads as follows: "Contractors, construction managers, and subcontractors engaged in construction or demolition operations shall institute and maintain all safety measures required by this chapter and provide all equipment or temporary construction installations necessary to safeguard the public and property affected by such contractor's operations."  NY City Building Code [Administrative Code of City of NY, tit 28, ch 33] § BC 3301.2; Bedford's Motion for Pre-Motion Conference ("Bedford's PMC"), ECF 50 Ex. H.  The violation described is "Failure to safeguard all persons and property affected by construction operations . . . worker on 2nd floor while sealing a hole with

---

[3] Fortune retrieved the fall video after the accident.  MNC Counter Response to Pl.'s 56.1 ¶ 10.

plywood has fallen (fatally) approx. 20' to basement floor below."  Bedford's PMC, Ex. H.  The remedies/requirements were to "stop all work immediately, [and to] safeguard [the] public and [the] property."  *Id.*

Perez does not blame Cervantes for the fall.  MNC Counter Response to Pl.'s 56.1 ¶ 144. Perez "did not tell [Cervantes] anything about fall protection, guardrails, or holes on the floor," and Perez did not provide Cervantes with a harness or lanyard.  *Id.* ¶¶ 145-46.  Cervantes did not refuse to use any equipment made available to him that would have prevented him from falling and getting injured. *Id.* ¶ 147.

## PROCEDURAL HISTORY

Plaintiff commenced this action on November 4, 2021.  Compl. at 1.  On December 22, 2021, Defendant Bedford LLC filed a Third-Party Complaint against RVM Carpentry, ECF 11. On March 15, 2022, Bedford LLC filed a Notice of Discontinuance of Third-Party Action, dismissing their claim against RVM without prejudice, ECF 21, and on April 4, 2022, MNC filed a second Third-Party Complaint against RVM, ECF 24.  On May 25, 2022, RVM filed an answer to MNC's second Third-Party Complaint.  RVM's Answer to Second Third-Party Complaint ("RVM Answer to Third-Party Compl."), ECF 28.

On September 15, 2023, the Plaintiff filed a report certifying that all discovery had been completed, ECF 47.

On January 12, 2024, Plaintiff, Bedford LLC, and MNC each filed their own motions for summary judgment.

On January 12, 2024, Plaintiff moved for summary judgment under Federal Rule of Civil Procedure 56, against defendants Bedford LLC, the Property owner, and MNC, the general contractor for the Property.  Plaintiff argues there is no dispute of material fact that Defendants

violated NYLL Sections 240(1) ("Sec. 240(1)") and 241(6) ("Sec. 241(6)").  Pl.'s Mot. Summ. J., at 1.  In support of Plaintiff's motion, Plaintiff filed a Rule 56.1 Statement of Material Facts, supporting exhibits, and a Memorandum of Law.  In opposition, Bedford filed its Memorandum of Law, and a responsive Rule 56.1 Statement.  *See* Memorandum in Opposition re First Motion for Summary Judgment ("Bedford's Opp. to Pl."), ECF 68; Bedford's Rule 56.1 Statement in Response to Plaintiff's ("Bedford's Reply 56.1").  In reply, Plaintiff filed a memorandum.  *See* Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment Against Defendant 3428 Bedford Pursuant to Labor Law Section 240(1) and Section 241(6), ECF 75.  Also in opposition, MNC filed a memorandum, declaration, and Rule 56.1 Statement.  *See* MNC's Declaration in Opposition, ECF 71; Memorandum of Law, ECF 71-1; Counter Response to Plaintiff's Rule 56.1 Statement, ECF 71-3.  In reply, Plaintiff filed a memorandum and Rule 56.1 Statement.  *See* Pl.'s Reply Memorandum, ECF 77; Reply Rule 56.1, ECF 77-1.

Also on January 12, 2024, Bedford filed its motion for summary judgment and supporting papers.  *See* Declaration of Melissa R. Callender ("Callender Decl.") ECF 63-1; Bedford's 56.1; Bedford's Mot. Summ. J.  Plaintiff opposed.  *See* Plaintiff's Opposition to 3428 Bedford LLC's Motion for Summary Judgment ("Pl.'s Opp. to Bedford's Mot. Summ. J."), ECF 65-1; Declaration of Plaintiff's Attorney, Andrew J. Carboy: Opposition to Summary Judgment Motion of Defendant 3428 Bedford LLC, ECF 65; Rule 56.1 Statement Plaintiff's Response to LLC 56.1 Statement ("Pl. 56.1 Reply to LLC"), ECF 65-2; Rule 56.1 Statement Plaintiff's Statement of Additional Material Facts, ECF 65-3.  In reply, Bedford filed a memorandum and counter 56.1 statement.  *See* Memorandum of Law in Reply to Plaintiff's Opposition to 3428 Bedford's Motion for Summary Judgment, ECF 73; 3428 Bedford's Reply to Plaintiff's Statement of Additional Facts, ECF 73-1. MNC also opposed Bedford's motion for summary judgement.  *See* MNC's Declaration in Partial

Opposition to Bedford's Rule 56 Motion for Summary Judgment, ECF 70; MNC's Memorandum

of Law in Partial Opposition of 3428 Bedford's Rule 56 Motion for Summary Judgment; MNC's

Counter Response to Bedford's Statement of Undisputed Facts, ECF 70-3.  In reply, Bedford filed

a memorandum and additional Rule 56.1 statement.  *See* Memorandum of Law in Reply to MNC's

Opposition to 3428 Bedford LLC's Summary Judgment Motion, ECF 74; 3428 Bedford's Reply

to MNC's Rule 56.1 Statement of Additional Facts, ECF 74-1.

On January 12, 2024, MNC also filed for summary judgment.  *See* MNC's Mem.  In Supp.

of Mot. Summ. J.; MNC's Declaration in Support of Motion for Summary Judgment ("MNC's

Decl. in Supp. of Mot. Summ. J."), ECF 62-1; MNC's 56.1; MNC and RVM Trade Subcontract

Agreement for Rough Carpentry Project: 3420, 3424, 3428, 3432, 3440 Bedford Ave Brooklyn,

NY 11210 ("Trade Subcontract"), ECF 62-13; Travelers Insurance Correspondence ("Insurance

Letters"), ECF 62-20.  Plaintiff opposed. *See* Memorandum in Opposition ("Pl.'s Memo. in Opp.

to MNC's Mot. Summ. J."), ECF 64-1; Plaintiff's Response to Defendant MNC's Rule 56.1

Statement ("Pl.'s Reply to MNC's 56.1"), ECF 64-2; Plaintiff's Rule 56.1 Statement of Additional

Material Fact, ECF 64-3.  In reply, MNC filed a memorandum and Rule 56.1 Statement.  See

MNC's Memorandum of Law in Reply to Plaintiff's Opposition to MNC's Rule 56 Motion for

Summary Judgment, ECF 76; MNC's Counter Response to Plaintiff's Statement of Additional

Material Facts ("MNC's Counter to Pl.'s Additional Facts"), ECF 76-1.  RVM Carpentry also

opposed.  *See* RVM's Memorandum of Law in Opposition ("RVM's Opp. Memo"), ECF 66;

Declaration of Jeremy A. Bernfield, ECF 66-1; Rule 56.1 Counter-Statement, ECF 66-4.  In reply

to RVM's opposition, MNC filed a memorandum of law and 56.1 counterstatement.  *See* MNC 's

Memorandum of Law in Reply to, ECF 72; MNC's, Counter Response to RVM's Statement of

Additional Material Facts, ECF 72-1.  Bedford LLC also opposed.  *See* Memorandum of Law in

Opposition to MNC, ("Bedford's Opp."), ECF 69; Rule 56.1 Statement 3428 Response to MNC's

Rule 56.1 Statement, ECF 69-1.  Bedford replied.  *See* MNC's Memorandum of Law in Reply to

Bedford, ECF 67.

**STANDARD OF REVIEW**

The Court "shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  In deciding a motion for summary judgment, the Court must "view the evidence in

the light most favorable" to the nonmoving party, "to draw all reasonable inferences in favor of

that party, and to eschew credibility assessments."  *Amnesty Am. v. Town of W. Hartford*, 361 F.3d

113, 122 (2d Cir. 2004).  Summary judgment is not warranted if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986).  Once the moving party has met its initial burden of establishing that no

material facts preclude judgment as a matter of law, the burden shifts to the nonmoving party to

raise "specific facts" showing that there is a genuine issue for trial.  *Matsuhita Elec. Indus. Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (holding the nonmovant "must do more than

simply show that there is some metaphysical doubt as to the material facts").  "[U]nsupported

allegations do not create a material issue of fact."  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41

(2d Cir. 2000).

**DISCUSSION**

**A.  Plaintiff's Motion for Summary Judgment**

Plaintiff seeks summary judgment against Bedford, the Property owner, and MNC, the

general contractor, arguing that they violated NYLL Sec. 240(1) and Sec. 241(6) and that MNC

violated Sec. 200.  Pl.'s Mot. Summ. J., at 1.  Both statutes allow workers injured on the job to sue

general contractors and property owners.

10

1.  **Whether Bedford LLC is Subject to Liability Under New York Labor Law Sections 240(1) and 241(6)**

The Court finds that Bedford is subject to a statutory exemption, the so-called "homeowner exemption[,]" exempting it from liability under Sec. 240(1) and 241(6).  Therefore, the Court denies Plaintiff's summary judgment claims against Bedford for Sec 240(1) and 241(6) violations.

The homeowner exemption is intended to "protect those who, lacking business sophistication, would not know or anticipate the need to obtain insurance to cover them against" liability imposed by NYLL Sec. 240(1) and Sec. 241(6).  *Boccio v. Bozik*, 41 A.D.3d 754 (N.Y. App. Div. 2007).  Whether the exemption applies depends on the manner in which the property at issue was used, not the status of the owner.  *See Chowdhury v. Rodriguez*, 57 A.D.3d 121, 126 (N.Y. App. Div. 2008); *Holifield v. Seraphim, LLC*, 92 A.D.3d 841, 842 (2d Dept. 2012).  To meet the criteria for the homeowner exemption, the property owner must pass a two-pronged test: (1) "[they] must show that the work was conducted at a dwelling that is a residence for only one or two families;" and (2) they must not "direct or control the work."  *Chowdhury*, 57 A.D.3d at 126.

Here, "Plaintiff concedes that [Bedford] LLC, unlike defendant MNC, did not direct or control the work[.]"  Pl.'s Opp. to Bedford's Mot. Summ. J. at 6.  However, Plaintiff argues that Bedford cannot satisfy the homeowner exemption's first requirement because "the LLC is a commercial, profit-seeking enterprise and its members (owners) do not live at the property."  Pl.'s Mot. Summ. J. at 6.  Plaintiff relies on the Third Department case, *Pelham v. Moracco*, LLC, 100 N.Y.S. 3d 744 (N.Y. App. Div. 2019), to argue that "[a] single family property owner may evade liability under the Labor Law if … one of [the LLC's] members [reside there], making the property's purpose no longer 'purely commercial[.]'"  Pl.'s Mot. Summ. J. at 23.

This Court disagrees.  Plaintiff is correct that the New York Court of Appeals has "avoided an overly rigid interpretation of the homeowner exemption and ha[s] employed a flexible 'site and

purpose' test to determine whether the exemption applies … [the court does not apply the exemption] where a building, though structurally a one-family dwelling, was used by its owner exclusively for commercial purposes[.]" *Bartoo v. Buell*, 87 N.Y.2d 362, 367-68 (1996) (parallel citations omitted).  However, it is undisputed that the home was constructed as a large, single-family home for Ralph and Judy Herzka.  Bedford's 56.1 ¶ 13, 44.  According to Bedford, "no income is generated from the property … [and] Plaintiff has not submitted evidence to the contrary."  Bedford's Reply to Pl. at 6.  Therefore, the Court finds that the property serves a primarily residential purpose, a purpose that is not "purely commercial."  Pl.'s Mot. Summ. J. at 23.

Moreover, the Second Department determines the applicability of the homeowner exemption based on *how the property was used*.  *See Castellanos v. United Cerebral Palsy Ass'n of Greater Suffolk*, 897 N.Y.S.2d 668, 668 (N.Y. Sup. Ct. 2009), *aff'd*, 77 A.D.3d 879, 880 (N.Y. App. Div. 2010) (finding defendant entitled to the homeowner exemption because defendant established that the building was used falsely as a residence for disabled individuals).   In *Castellanos*, the court did not consider the fact that no member of the corporation that owned the residence actually resided at the property. *Id.*

Further, Bedford's status as a corporate entity does not deny Bedford the homeowner exemption.  Corporate defendants have received the homeowner exemption despite their corporate structure, so long as the residence itself served a residential purpose.  *See* Castellanos, 77 A.D.3d at 879; *Parise v. Green Chimneys Children's Servs., Inc.*, 106 A.D.3d 970, 971 (N.Y. App. Div. 2013) (finding that defendant corporation was entitled to judgment as a matter of law because defendant established that the property was a single-family home, it served no commercial or business use, and the corporation did not direct or control the work being done); *Holifield*, 92 A.D.3d at 842 (finding that the defendant trust was entitled to judgment as a matter of law because

it established that the property was intended to be used solely for residential purposes, the property was not income-producing, and the trust did not direct or control the work).

Labor Law Sec. 240(1) and Sec. 241(6) are identical. *Nurse v. Uberto Ltd.*, 111099/2010, 2013 WL 7018172, at *13 (N.Y. Sup. Ct. Nov. 22, 2013). Accordingly, the Court grants Bedford's summary judgment motion dismissing Sec. 240(1) *and* Sec. 241(6) claims against 3428 Bedford LLC because Bedford is exempt from liability under the homeowner exemption.

### 2. Plaintiff's Claims Against MNC

Plaintiff argues that it is entitled to summary judgment under NYLL Sec. 240(1), Sec. 241(6), and Sec. 200. The Court finds that a genuine dispute of material fact remains as to whether MNC violated Sec. 240(1), Sec. 241(6), and Sec. 200. Therefore, the Court denies the parties' cross-motions for summary judgment with respect to Plaintiff's claims against MNC under the aforementioned New York labor laws.

### a. New York Labor Law Sec. 240(1)

New York Labor Law Sec. 240(1), commonly called the "scaffold law," imposes a non-delegable, duty under which a "contractor and owner may be held liable even if they did not exercise supervision or control over the plaintiff's work." *Dwyer v. Goldman Sachs Headquarters LLC*, 819 F. Supp. 2d 320, 326 (S.D.N.Y. 2011) (citing *Ross v. Curtis–Palmer Hydro–Elec. Co.*, 81 N.Y.2d 494, 500 (1993) (parallel citations omitted)); *accord Gigantino v. Turner Constr. Co.*,14-CV-3619 (RRM) (RER), 2017 WL 3887868, at *2 (E.D.N.Y. Sept. 5, 2017) ("§ 240(1) imposes non-delegable, strict liability upon commercial property owners and general contractors to provide safety devices to protect workers from elevation-related risks.") (citing *Godoy v. Neighborhood P'ship Hous. Dev. Fund Co., Inc.*, 104 A.D. 3d 646 (N.Y. App. Div. 2013). In pertinent part, the law provides that:

> All contractors and owners and their agents, **except owners of one and two-family dwellings who contract for but do not direct or control the work**, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.  No liability pursuant to this subdivision for the failure to provide protection to a person so employed shall be imposed on professional engineers as provided for in article one hundred forty-five of the education law, architects as provided for in article one hundred forty-seven of such law or landscape architects as provided for in article one hundred forty-eight of such law who do not direct or control the work for activities other than planning and design.  This exception shall not diminish or extinguish any liability of professional engineers or architects or landscape architects arising under the common law or any other provision of law.

N.Y. Lab. Law § 240 (emphasis added).

Liability under this section of the labor law is deemed "absolute" "because it may attach to a property owner: (i) even though the job was performed by an independent contractor over which it exercised no supervision or control; and (ii) even though the laborer's own negligence may have contributed to the injury."  *Uk Kim v. Jeo Son*, 05-CV-1262 (ENV) (JO), 2007 WL 1989473, at *3 (E.D.N.Y. July 9, 2007) (cleaned up) (citations omitted).[4]

To prevail under Sec. 240(1), an injured worker must show "(1) that the defendant violated Labor Law § 240(1), and (2) that such violation was a proximate cause of his or her injuries." *Csikos v. 230 Park S. Apartments, Inc.*, 22-CV-2882, 2024 WL 276720, at *1 (2d Cir. Jan. 25, 2024) (citing *Mora v. 1-10 Bush Terminal Owner, L.P.*, 186 N.Y.S.3d 51, 53 (App. Div. 2023)). To show a violation of Sec. 240(1) "an injured worker must show . . . that a relevant safety device was absent or defective," and that such absence or defect was a proximate cause of a gravity-related injury."  *Gigantino*, 2017 WL 3887868, at *2 (citing *Narducci v. Manhasset Bay Assocs.*,

---

[4]  Furthermore, "plaintiff who demonstrates that a violation of the statute was the proximate cause of his injury, cannot have his recovery reduced by a claim that the plaintiff was also partially responsible for the injury."  *Wojcik v. 42nd St. Dev. Project,* 386 F. Supp. 2d 442, 450 n.8 (S.D.N.Y. 2005).

96 N.Y.2d 259, 267-68 (N.Y. 2001) ("liability is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein."). "The burden of showing that an elevation-related risk exists, and that the owner or contractor did not provide adequate safety devices falls upon the plaintiff." *McNeight v. Railcar Custom Leasing, LLC*, 345 F. App'x 612, 614 (2d Cir. 2009) (quoting *Broggy v. Rockefeller Grp., Inc.*, 870 N.E.2d 1144, 1147 (N.Y. 2007)).

Plaintiff contends that Defendants violated the statute by leaving an inadequately covered opening on the floor and by not providing Cervantes with a harness, guardrails, or some other form of fall protection. Pl.'s Mot. Summ. J. at 11-12. According to Plaintiff, the absence of those protections was the cause of Mr. Cervantes' fall and subsequent death. *See id.* 8-9. Defendant MNC claims that Cervantes' act of moving the piece of plywood covering the hole was the proximate cause of his fall. *See* MNC Dec'l. in Opp. ¶¶ 6-8. But, contributory negligence is not a defense to Sec. 240(1) liability. *Rodriguez v. Biltoria Realty, LLC*, 250 F. Supp. 2d 122, 127 (E.D.N.Y. 2003). Therefore, summary judgment is only appropriate where it is shown that an intervening worker's actions were the "sole" proximate cause. *See id.* (citing New York case law); *see also Robinson v. East Med. Ctr., LP*, 6 N.Y.3d 550, 554, (N.Y. 2006) (affirming summary judgment where sole cause of plaintiff's injuries was his use of an overturned bucket, instead of an available and adequate ladder); *Montgomery v. Fed. Express Corp.*, 4 N.Y.3d 805, 806, (N.Y. 2005) (same).

Ultimately, any argument about how the plywood was removed, whether it was screwed down, and whether it was adequately marked, is speculative because there were no eyewitnesses to Cervantes' fall. Plaintiff argues that Defendant's lack of supervision and safety equipment was the proximate cause of Mr. Cervantes' fall. In contrast, Defendant MNC argues that Cervantes'

15

action of moving the plywood board, working in an unauthorized area, and possibly unscrewing the cover, was the cause of Cervantes' fall.  Both parties' arguments have merit and at a minimum, present issues of material fact precluding summary judgment.  Importantly, the parties dispute whether the hole was appropriately marked "hole," whether the plywood covering the hole was screwed down and Cervantes unscrewed it as part of his cleaning, and whether Cervantes was or was not instructed to clean the area near the hole.  "It is well settled that where conflicting evidence is presented that would support various inferences, *the issue of proximate cause is properly a question of fact for the jury to decide*.'" *Guenther v. Mod. Cont'l Cos.*, 561 F. Supp. 2d 317, 326 (E.D.N.Y. 2008) (citations omitted) (emphasis added).

For the aforementioned reasons, the Court denies both Plaintiff's and MNC's motions for summary judgment with respect to NYLL Sec. 240(1).

### b.  New York Labor Law Sec. 241(6)

Plaintiff's motion for summary judgment under Sec. 241(6) is similarly denied because there exists a genuine dispute over: (a) whether the hole was appropriately marked as a "hole;" (b) whether the plywood covering the hole was screwed down and Cervantes unscrewed it as part of his cleaning; and (c) whether Cervantes was or was not instructed to clean the area near the hole.

NYLL Sec. 241(6) provides in pertinent part:

> All areas in which construction, excavation or demolition work is being performed **shall be** so constructed, shored, equipped, **guarded**, arranged, operated and conducted **as to provide reasonable and adequate protection** and safety to the persons employed therein or lawfully frequenting such places.  The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith.

N.Y. Lab. Law § 241 (emphasis added).

Although this provision of the labor law fails to define the standard for "reasonable and adequate protection," it is clear that "[t]o establish liability under NYLL section 241(6), a plaintiff must demonstrate that his injuries were proximately caused by a violation of an applicable New York Industrial Code provision." *Buono v. AvalonBay Cmtys.*, 19-CV-5413 (LGS), 2021 WL 51524, at *3 (S.D.N.Y. Jan. 6, 2021); *see also Quishpe v. Urban Atelier Group, LLC*, 21-CV-02723 (FB) (RER), 2023 WL 5625307, at *4 (E.D.N.Y. Aug. 31, 2023) ("To establish liability under § 241(6), a plaintiff must specifically plead and prove the violation of an applicable Industrial Code regulation.").  To sustain a claim under Sec. 241(6), a plaintiff must establish that there is "no genuine dispute of fact that (1) the defendant was an owner, contractor, or agent of an owner or contractor; (2) that the defendant violated a specific, 'concrete' implementing regulation of the Industrial Code; and (3) that the violation was the 'proximate cause' of the plaintiff's injury." *Walter v. CSX Transp., Inc.*, 19-CV-1583S, 2022 WL 1459043, at *6 (W.D.N.Y. May 9, 2022), *aff'd*, 22-1254, 2023 WL 4044113 (2d Cir. June 16, 2023) (citations omitted) (cleaned up); *accord Buono*, 2021 WL 51524, at *3.

Here, Plaintiff alleges a violation of several of NYLL Sec. 241(6)'s implementing regulations, i.e., the New York Industrial Code regulations.   Specifically, Plaintiff argues that he is entitled to summary judgment for violations of the following rules: New York Comp. Codes & Regs. Tit. 12 § 23-1.7(b)(1) (defined as "12 N.Y.C.R.R. § 23-1.7(b)(1)" or "Industrial Code § 23-1.7(b)(1)"), Falling Hazards; New York Comp. Codes & Regs. Tit. 12 § 23-1.15 (defined as "12 N.Y.C.R.R. § 23-1.15" or "Industrial Code § 23-1.15"), Safety Railing; and New York Comp. Codes & Regs. Tit. 12 § 23-2.4(c)(2) (defined as "12 N.Y.C.R.R. § 23-2.4(c)(2)" or "Industrial Code § 23-2.4(c)(2)"), Flooring.  Pl.'s Mot. Summ. J. at 5. [5]  To establish a claim under NYLL

---

[5] Plaintiff does not seek summary judgment on each violation alleged in his complaint.  In his complaint, Plaintiff alleged that Bedford and MNC violated 23-1.5: (a) Health and safety protection required; 23-1.7: (b) Falling hazards.

241(6), "[t]he regulation alleged to have been breached must set forth a 'specific, positive command' and not simply a recitation of common-law safety principles." *Dwyer*, 819 F. Supp. 2d at 327 (citations omitted).[6]

### 1)   Industrial Code § 23-1.7(b)—Protection from general hazards

Plaintiff alleges Sec. 241(6) liability for Bedford and MNC for violation Industrial Code §23-1.7(b), which provides in relevant part that:

> (b) Falling hazards.
> (1) Hazardous openings.
> (i) *Every hazardous opening* into which a person may step or fall *shall be guarded by a substantial cover fastened in place or* by a *safety railing constructed and installed in compliance with this Part* (rule).
> (ii) Where free access into such an opening is required by work in progress, a barrier or safety railing constructed and installed in compliance with this Part (rule) shall guard such opening and the means of free access to the opening shall be a substantial gate. Such gate shall swing in a direction away from the opening and shall be kept latched except for entry and exit.
> (iii) Where employees are required to work close to the edge of such an opening, such employees shall be protected as follows:
> (a) Two-inch planking, full size, or material of equivalent strength installed not more than one floor or 15 feet, whichever is less, beneath the opening; or
> (b) An approved life net installed not more than five feet beneath the opening; or
> (c) An approved safety belt with attached lifeline which is properly secured to a substantial fixed anchorage.

12 N.Y.C.R.R. § 23-1.7(b) (emphases added).

Here, there was a hole in the floor with a 26-foot drop.  This is a plainly hazardous opening. *See generally Walter*, 2022 WL 1459043, at *11 ("Courts have held that an opening 'must be of significant depth and size to fall within' State Industrial Code § 23-1.7(b)'s protection . . .   While

---

[1] Hazardous openings; 23-1.7: (e) Tripping Hazards; Section 23-1.30. Illumination; 23-1.15 Safety railing; 23-1.16 Safety belts, harnesses, tail lines and lifelines; 23-1.17 Life nets;  23-1.19 Catch platforms; 23-1.22 Structural runways, ramps and platforms; 23-1.32 Imminent danger – notice, warning and avoidance; 23-2.4 Flooring requirements in building construction.  Compl. ¶ 119; Pl.'s Mot. Summ. J. at 5.  Plaintiff only seeks summary judgment on three of the alleged violations.  Pl.'s Mot. Summ. J. at 5-6.  MNC seeks summary judgment on all alleged Industrial Code section violations.  MNC's Mem. In Supp. of Mot. Summ. J. ¶¶ 10-20.

[6] As discussed above, "[t]he duty to comply with such regulations is non-delegable.  Thus, even if the general contractor and owner were not at fault, they may be held vicariously liable under section 241(6) if one of their subcontractors failed to comply with a regulation." *Id.*

there are no specific minima, cases have used a hole as large as a person to fall though as the standard.") (internal citation omitted).

This hazardous opening was not "guarded by a . . . safety railing," nor was there a "barrier," gate, two-inch planking, "an approved life net installed not more than five feet beneath the opening," nor "an approved safety belt with attached lifeline." 12 N.Y.C.R.R. §23-1.7(b)(1). However, it is disputed whether there was a "substantial cover fastened in place" by screws over the opening. *Id.*; MNC Dec'l. in Opp. ¶¶ 115-20; Pl.'s Mot. Summ. J. at 21. Accordingly, although Plaintiff has satisfied §23-1.7(b)(1)(ii)-(iii), Plaintiff has not satisfied the elements of §23-1.7(b)(1)(i) because it is disputed whether a cover was fastened to the top—both parties cite conflicting evidence supporting or contesting that the floor was covered. *See* MNC's Counter to Pl.'s Additional Facts at 42 ("it could not be concluded one way or the other whether the plywood was screwed into the floor or not"); Pl.'s Reply to MNC's 56.1 ¶ 18 ("Q. To the best of your understanding, the plywood at the location of the fall was not secured and was not marked with the word 'hole' or 'holes'; is that right? A. That is correct."); MNC's Counter to Pl.'s Additional Facts at 22 ("There is evidence the covering was secure. Victor Perez saw plywood covering the subject opening with screws in it.") Plaintiff must demonstrate that none of the relevant §23-1.7(b) provisions have been satisfied to prevail. Moreover, "[t]o sustain a claim under § 241(6), a plaintiff must establish no genuine dispute of fact that . . . the violation was the 'proximate cause' of the plaintiff's injury." *Walter*, 2022 WL 1459043, at *6. Here, even if Plaintiff had shown that Defendants failed to satisfy any of §23-1.7(b)'s provisions, Plaintiff's motion would still fail because Plaintiff has not shown that the violation—the lack of a safety railing, barrier, or harness—was the proximate cause of Cervantes' fall.

Accordingly, this Court cannot grant summary judgment on Plaintiff's Sec. 241(6) Industrial Code §23-1.7(b) claim because a genuine dispute of material fact still exists as to: (a) whether there was a substantial cover fashioned in place over the opening, that is whether a violation occurred; and (b) if there was a violation, whether the violation was the proximate cause of the fall.  Plaintiff's motion for summary judgment under Sec. 241(6), based on Industrial Code §23-1.7(b) is denied because there remains a triable issue of fact regarding the purported violation.

### 2)  Industrial Code §23-1.15—Safety railing

Plaintiff alleges a violation of Industrial Code regulation §23-1.7(b) requiring safety railings. Pl.'s Mot. Summ. J. at 5; *See* 12 N.Y.C.R.R. § 23-1.7(b).  As explained *supra*, Industrial Code §23-1.7(b), requires that "[e]very hazardous opening into which a person may step or fall shall be guarded by a substantial cover fastened in place or by a safety railing constructed and installed in compliance with this Part (rule)."  Industrial Code §23-1.15 outlines the dimensions and physical characteristics of safety railings required to be installed pursuant to N.Y.C.R.R. 23-1.7(b)(1)(i).  *See* 12 N.Y.C.R.R. § 23-1.15.  There was no safety railing here.  As explained *supra*, Industrial Code §23-1.7(b), requires that openings be surrounded by a safety railing *or* "be guarded by a substantial cover fastened in place."  Therefore, it is not enough to show that there was no safety railing.  Plaintiff must also demonstrate no genuine dispute of material fact that there was no "substantial cover fastened in place," for the Court to hold that Defendants violated Industrial Code §§ 23-1.7(b) and 23-1.15.  Whether there was a "substantial cover fastened in place" is disputed.  Therefore, Plaintiff's motion for summary judgment under Sec. 241(6), based on Industrial Code § 23-1.15 is denied.

### 3)  Industrial Code § 23-2.4(c)(2)—Flooring requirements in building construction

Plaintiff also claims a violation of the Industrial Code provision regarding flooring requirements.  The provision provides:

> (2) In the construction of a building or other structure having single wood flooring or any other flooring system, the floor immediately below the story where the floor joists are being installed shall be kept covered. Such flooring shall be at least two inches thick full size or shall be of material of equivalent strength and be laid tight and secure.

12 N.Y.C.R.R. § 23-2.4(c)(2).

Plaintiff contends that Defendants "violated NYCRR 23–2.4(c)(2), requiring flooring, in buildings under construction, to be "laid tight and secure."  Pl.'s Memo. in Opp. to MNC's Mot. Summ. J. at 21.  In contrast, Defendant argues that this claim "must be dismissed as that section sets forth standards for buildings with single wood flooring, double wood flooring, or bar joint construction, which was not involved herein."  MNC's Mem. In Supp. of Mot. Summ. J. ¶ 17.

Plaintiff has failed to show that this statutory provision applies.  On its face, it is unclear which exact portion of the statute Plaintiff wishes to apply here.  The plywood was covering a hole for a stairwell—it was not meant to have "single wood flooring or any other flooring system."  Moreover, the plywood itself was not the "floor" of the structure such that it was required to be "at least two inches thick full size or . . . of equivalent strength and [] laid tight and secure."  12 N.Y.C.R.R. § 23-2.4(c)(2).  Therefore, the Court dismisses Plaintiff's summary judgment motion under Sec. 241(6), based on Industrial Code § 23-2.4(c)(2) against Bedford and MNC.

### c.  New York Labor Law § 200 and Common Law Negligence[7]

New York Labor Law § 200 "codifies the common law theory of negligence and 'imposes a duty upon an owner or general contractor to provide construction site workers with a safe place

---

[7] According to Plaintiff, "[t]here is no evidence in the record that the owner of the construction site, defendant 3428 Bedford LLC, exercised any control over the work or had notice of the hazard at issue."  Pl.'s Memo. in Opp. to MNC's Mot. Summ. J.at  24.  Accordingly, Plaintiff chose to discontinue his claim against Bedford LLC.  *Id.* at 24.

of work.'" *Villalba v. Robo-Breaking Co.*, 11-CV-1030 (WFK) (RML), 2014 WL 4829280, at *7 (E.D.N.Y. Sept. 29, 2014).

Sec. 200 claims fall into two categories: "(1) those involving the manner in which work was performed, and (2) those involving a dangerous or defective condition at a work site." *Dwyer*, 819 F. Supp. 2d at 329 (internal citation omitted). Plaintiff contends that the uncovered hole at the Property falls into both categories of Sec. 200 claims. Pl.'s Memo. in Opp. to MNC's Mot. Summ. J. at 24. To be held liable for an injury stemming from the manner in which work was performed, the "defendant must have actually exercised supervision and control over the work performed at the site." *Id.* (citing *McLeod v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter Day Saints,* 41 A.D.3d 796, 798, 839 N.Y.S.2d 164 (2d Dep't 2007)). "General supervisory authority alone is insufficient to establish supervisory control; the defendant must have controlled the specific manner in which the plaintiff performed his work." *Id.* at 90.

Where a plaintiff alleges they were injured by a dangerous or defective condition at a work site, "the question is not whether the defendant exercised supervisory control over the manner of performance of the injury-producing work, but rather whether it had notice of the condition." *Villalba*, 2014 WL 4829280, at *7. "Thus, when an injury results from a premises condition, property owners may be liable 'if the owner either created the dangerous condition that caused the accident or had actual or constructive notice of the dangerous condition that caused the accident.'" *Id.* "To constitute constructive notice, a condition must be 'visible and apparent and it must exist for a sufficient length of time prior to the accident to permit [defendant] to discover and remedy it.'" *Krawec v. Kiewit Constructors Inc.*, 11-CV-0123 (LAP), 2013 WL 1104414, at *9 (S.D.N.Y. Mar. 1, 2013) (internal citations omitted) (alteration in original).

22

Defendants contend that Plaintiff cannot sustain a claim under either theory of liability. First, Defendant asserts that this case is solely a "means and methods case," because "[t]he accident arose out of the means and methods of RVM's work."  MNC's Decl. in Supp. of Mot. Summ. J. ¶ 10.  Therefore, the dangerous condition analysis does not apply.  Defendant asserts that "RVM was solely responsible for directing, controlling and supervising Cervantes' work and the subject carpentry work.   RVM was solely responsible for all construction work done under this MNC-RVM contract, including technique, procedures, sequence, means, and method and for coordination of its workers."  *Id.*

In contrast, Plaintiff argues the records "demonstrate that general contractor MNC exercised control with respect to the installation of guardrails and protective measures.  MNC issued the order to securely cover the opening after Mr. Cervantes' fall.  MNC exercised stop work authority, and had previously issued corrective instructions to contractors, on site, to address uncovered holes." Pl.'s Memo. in Opp. to MNC's Mot. Summ. J. at 24; Pl.'s Opp. to Bedford's Mot. Summ. J. at 3.  Defendant asserts that "this is [just] a means and methods case".  MNC's Mem. In Supp. of Mot. Summ. J. ¶ 7.  Defendant contends that because this is a means and methods case, a general contractor can only be held liable if that contractor "had the authority to supervise or control the performance of the work."  *Id.*  Moreover, Defendants argue that "RVM [not MNC] was solely responsible for the framing of the opening, covering and protection over the opening." *Id.* ¶ 8.

Here, it is disputed whether MNC had control over the work performed at the site.  *See* MNC's Counter to Pl.'s Additional Facts at 52-55.  Assuming, *arguendo*, that MNC had control over the work performed at the site, RVM was responsible for framing the stairwell so RVM arguably "created the dangerous condition."  *See Villalba*, 2014 WL 4829280, at *7.  Whether

MNC had actual constructive notice of the hole is less clear.  If MNC both had control over the work performed at the site *and* had constructive notice of the hole, then MNC would be liable under Sec. 200.   However, if MNC lacked either control or notice, then MNC would not be liable.

Whether MNC had control over the worksite, either through its control over the methods the trade workers and subcontractors used, is genuinely disputed.  Therefore, the Court denies Plaintiff's motion for summary judgment based on Sec. 200 liability.

### B.  MNC's Motion for Summary Judgment

MNC seeks summary judgment and asks this Court to: (1) dismiss Plaintiff's New York Labor Law Sec. 200 and common-law negligence claims against MNC; (2) dismiss Plaintiff's Labor Law 241(6) claims against MNC; (3) dismiss Plaintiff's Labor Law Sec. 240(1) claims against MNC; (4) award MNC contractual and common-law indemnification against RVM; (5) award MNC damages from RVM's breach of contract in failing to procure insurance; and (6) dismiss 3428 Bedford LLC's and RVM's cross-claims against MNC.

RVM opposes MNC's motion insofar as it seeks summary judgment for contractual indemnification, common law indemnification, and damages for breach of contract against RVM, as well as the dismissal of RVM's counterclaims.

#### 1.  Plaintiff's New York Labor Law Sec. 200 and Common Law Negligence Claims Against MNC

As described in Section 2.c., *supra*, the Court has found a genuine issue of material fact as to MNC's liability under NYLL Sec. 200 and Common Law Negligence.   Accordingly, the Court denies MNC's motion for summary judgment on this issue.

#### 2.  Plaintiff's Labor Law 241(6) Claims Against MNC

Per sections 2.a.-b., *supra*, the Court finds a genuine issue of material fact regarding liability under NYLL 241(6) under Industrial Code § 2.4(c)(2).  Therefore, the Court also declines MNC's motion for summary judgment regarding liability under § 23-1.7(b) and § 23-1.15.

For the reasons stated below, the Court grants MNC's summary judgment motion pursuant to the remaining alleged industrial code violations and Occupational Safety and Health Administration ("OSHA") violations, undergirding Plaintiff's Sec. 241(6) claim.

### a.  Industrial Code

MNC in its memorandum in support of summary judgment argued that the remaining eight alleged Industrial Code violations, for which Plaintiff did not seek summary judgment, should be dismissed.  MNC's Mem. In Supp. of Mot. Summ. J. ¶¶ 10-20.  Defendant argues that §§ 23-1.5(a), 23-1.7(e), 23-1.3, 23-1.16, 23-1.17, 23-1.19, 23-1.22, 23-1.32, 23-2.4(a), 23-2.4(b) of the Industrial Code do not apply to this case.  *See* MNC's Mem. In Supp. of Mot. Summ. J. ¶¶ 10-20; *see generally* Pl.'s Memo. in Opp. to MNC's Mot. Summ. J. at 6-7; 19-23 (rebutting some of MNC's assertions regarding Industrial Code section violations, but not §§ 23-1.5(a), 23-1.7(e), 23-1.3, 23-1.16, 23-1.17, 23-1.19, 23-1.22, 23-1.32, 23-2.4(a), 23-2.4(b)).

In his Opposition, Plaintiff does not rebut any of Defendant's arguments on these claims.  Accordingly, the Court deems these claims abandoned and grants summary judgment to Defendant on them.  *See Maher v. Alliance Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 267 (E.D.N.Y. 2009) (federal courts may deem a claim abandoned when a party moves for summary judgment and the party opposing fails to address the argument in any way).

### b.  OSHA Claims

MNC also seeks summary judgment regarding liability under New York City Administrative Code and OSHA provisions because "[t]hose standards are insufficient to support

a claim brought under Labor Law § 241(6) *Schiulaz v Arnell Constr. Corp.*, 261 A.D. 2d 247, 248, 690 N.Y.S.2d 226 [1st Dept 1999]." *See* MNC's Mem. In Supp. of Mot. Summ. J. ¶ 18.  Again, Plaintiff does not rebut MNC's argument in its opposition to MNC's motion for summary judgment. *See* MNC's Mem. In Supp. of Mot. Summ. J. ¶¶ 10-20; *see generally* Pl.'s Memo. in Opp. to MNC's Mot. Summ. J. at 6-7; 19-23.  Therefore, the Court deems these claims abandoned and grants summary judgment to Defendant on them.  *See Maher*, 650 F. Supp. 2d at 267.

### 3.  Plaintiff's Labor Law Section 240(1) Claims Against MNC

Per Section 2a., *supra*, the Court declines to grant summary judgment on Plaintiff's Sec. 240(1) claims because a genuine dispute of material fact remains.  Therefore, the Court also declines to dismiss Plaintiff's claims pursuant to MNC's motion for summary judgment.

### 4.  Contractual and Common Law Indemnification Against RVM

MNC and RVM filed crossclaims arguing that they are entitled to contractual and common law indemnification from RVM.  MNC's Mem. In Supp. of Mot. Summ. J. ¶¶ 26-32.  MNC contends that (1) Cervantes' fall "triggered RVM's contractual indemnification obligations to MNC[;]" (2) that RVM was "clearly negligent and therefore owes MNC common-law indemnification to the extent MNC is found statutorily liable under New York's Labor Law[;]" and (3) RVM did not procure the requisite insurance required by its contract with MNC."   MNC's Decl. in Supp. of Mot. Summ. J.  ¶ 11.

MNC seeks summary judgment regarding its contractual and common law indemnification claims against Bedford and RVM.  To determine the enforceability of the contractual and common law indemnification claims, the Court must first determine negligence.  "An indemnification clause is enforceable where the party to be indemnified is found to be free of any negligence[.]" *Giangarra v. Pav-Lak Contracting, Inc.*, 55 A.D.3d 869, 871 (N.Y. App. Div. 2008) (parallel

citations omitted).  However, as discussed *supra* in sections 2.a. and 2.b., the Court does not

determine negligence at this stage because there are conflicting statements of material fact that are

core to determining negligence.

Therefore, this Court declines to grant summary judgment on the contractual and common

law indemnification claims.

### a.  Contractual Indemnification

Under New York law, the right to contractual indemnity depends upon the specific language

of the contract.  *See generally In re Bridge Constr. Servs. of Fla., Inc.*, 140 F. Supp. 3d 324, 331

(S.D.N.Y. 2015).  A "contract that provides for indemnification will be enforced as long as the

intent to assume such a role is sufficiently clear and unambiguous." *Dwyer*, 819 F. Supp. 2d at

330-31.  However, even if a contract clearly and unambiguously provides for indemnification, a

party cannot seek indemnification for its own negligence.  *Id.* at 331 (citing N.Y. General

Obligations Law § 5-322.1).  New York General Obligations Law § 5-322.1 states in pertinent

part:

> A covenant, promise, agreement or understanding . . . relative to the construction,
> alteration, repair or maintenance of a building . . . purporting to indemnify or hold
> harmless the promisee against liability for damage arising out of bodily injury to
> persons or damage to property contributed to, caused by or resulting from the
> negligence of the promisee, his agents or employees, or indemnitee, whether such
> negligence be in whole or in part, is against public policy and is void and
> unenforceable.

N.Y. General Obligations Law § 5-322.1.

Put simply, an indemnification provision that allows a party to seek indemnification for its own

negligence will not be enforced.  *Warboys v. SHI-III Briarcliff Reit, LLC*, No. 19 CIV. 2491 (PED),

2021 WL 2003192, at *4 (S.D.N.Y. May 19, 2021); *accord Dwyer*, 819 F. Supp. 2d at 331 ("Under

New York law, a party cannot seek indemnification for its own negligence.  However, New York

law does not bar the enforcement of an indemnification provision where . . . the Court has found that the parties seeking indemnification were not negligent, despite the fact that they might be vicariously liable under Labor Law section 241(6)." (cleaned up)).

Because it would be improper for a party to be indemnified for their own negligence, a showing of negligence is a prerequisite for contractual indemnification. Based on the dispute of material facts, the Court is not able to determine that MNC has shown they lacked negligence under the Sec. 240(1) and Sec. 241(6) claims. *See* section 2.a.,b. *supra.* Until negligence is determined, it would be improper for the Court to indemnify MNC. As a result, MNC cannot be granted summary judgment for their contractual indemnification claim.

### b. Common Law Indemnification

Under New York law, "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." N.Y. C.P.L.R. 1401.

"To establish a claim for common law indemnification, 'the one seeking indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident.'" *Warboys v. SHI-III Briarcliff Reit, LLC*, 19 CIV. 2491 (PED), 2021 WL 2003192, at *5 (S.D.N.Y. May 19, 2021) (citing *Hernandez v. GPSDC (New York) Inc.*, 04 Civ. 127 (GWG), 2008 WL 220636, at *3 (S.D.N.Y. Jan. 28, 2008) (citing *Correia v. Professional Data Mgt.*, 259 A.D.2d 60, 65 (N.Y. App. Div. 1st Dep't 1999))). "Common law indemnity is barred 'where the party seeking indemnification was itself at fault.'" *Warboys*, 2021 WL 2003192, at *5 (citing *Goodman v. Port Auth. Of New York & New Jersey*, 850 F.Supp.2d 363, 390 (S.D.N.Y. 2012)).

28

As outlined above, based on the facts and evidence provided at this stage, MNC has not been able to demonstrate that they were not negligent. For the Court to grant common law indemnification, the moving party must be able to demonstrate that they were not at fault. Since a dispute over facts material to establishing MNC's fault persists, the Court declines to grant summary judgment.

### 5.  Damages from RVM's Purported Breach of Contract in Failing to Procure Insurance

MNC seeks summary judgment for its breach of contract claims against RVM alleging failure to procure insurance covering RVM's work. The Court grants RVM's crossclaim against MNC, finding that RVM did not breach its contract with MNC. MNC asserts that RVM breached a contract between MNC and RVM because RVM agreed to:

- procure and maintain commercial general liability insurance coverage with limits of $1,000,000 per occurrence and $2,000,000 general aggregate
- procure and maintain umbrella liability insurance with limits of $5,000,00 per occurrence and general aggregate
- name MNC as an additional insured on a primary and non-contributory basis, covering liability arising out of the work performed by RVM.

MNC's Decl. in Supp. of Mot. Summ. J. at 32; RVM responds that the evidence MNC cites for its proposition "clearly demonstrate[s] that RVM indeed procured the coverage required of it per the contract[.]" RVM's Opp. Memo. at 12. This Court agrees.

RVM and MNC's contract provides in pertinent part:

> The Owner and Contractor or any other entity or company designated by the Contractor (such as the Project lender) are to be named as an additional insured on a primary and non-contributory basis to the Subcontractor's Comprehensive General Liability, Contractual Liability, Advertising and Personal Injury Liability and Products/Completed Operations Liability, or by using a company specific endorsement that provide equivalent protection.

Trade Subcontract ¶ 10.1.

Here, the "Contractor" is MNC.  *Id.* at 3.  The contract clearly dictates that RVM, the "Subcontractor," *id.*, add MNC "as an additional insured on a primary and non-contributory basis to [RVM's] Comprehensive General Liability, Contractual Liability, Advertising and Personal Injury Liability and Products/Completed Operations Liability." *Id.* ¶ 10.1.  RVM fulfilled its duties under the contract by procuring a general liability policy that includes MNC as an additional insured.  Trade Subcontract ¶ 10.1.  However, as MNC points out, "pursuant to the policy attached by RVM (*see* page 158 of their Exhibit 1), the additional insured endorsement limits coverage only to injury or damage caused by the acts or omissions of RVM."

> **COMMERCIAL GENERAL LIABILITY COVERAGE PART**
> **1.** WHO IS AN INSURED - (Section II) is amended to include any person or organization that you agree in a "written contract requiring insurance" to include as an additional insured on this Coverage Part, but:
> **a)** Only with respect to liability for "bodily injury", "property damage" or "personal injury"; and
> **b)** If, and only to the extent that, **the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work"** to which the "written contract requiring insurance" applies.  The person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.

Per section 1(b), MNC does not qualify as an additional insured for their independent acts or omissions.  MNC is only covered for injury or damage caused by acts or omissions of RVM or RVM's subcontractor in the performance of their work.

The Court finds RVM's policy satisfied its contractual agreement with MNC to obtain insurance covering RVM's "work."  Therefore, the Court dismisses MNC's claim for breach of contract against RVM.

### 6.  Dismissal of 3421 Bedford LLC's Cross-Claims Against MNC

MNC argues that since Bedford is entitled to the homeowner exemption, Bedford will sustain no loss.  MNC's Mem. In Supp. of Mot. Summ. J. ¶ 34.  Therefore, MNC does not need to

indemnify Bedford, thus Bedford's claims for contractual indemnity, common law indemnity, and contribution against MNC must be dismissed.  The Court agrees that Bedford LLC is entitled to the homeowner exemption.  Therefore, Bedford LLC's claims for contractual indemnity, common law indemnity, and contribution against MNC are dismissed.

MNC also argues that "Bedford's claim for breach of contract[8] against MNC must be dismissed as MNC procured the insurance required by contract."  MNC's Mem.  In Supp. of Mot. Summ. J. ¶ 35.  In response, Bedford argues that MNC failed to meet its burden entitling it to a dismissal of Bedford's breach of contract claim because "MNC fails to mention what insurance coverage it was required to procure on behalf of 3428 Bedford … [and] the insurance policy to which MNC cites is not certified, and therefore, is not in admissible form."  Bedford's Opp.  at 7-8.  Further, Bedford says that "MNC merely refers the Court to an exhibit without any explanation of what the exhibit shows."  *Id.*

Rule 56 provides that "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record … or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1)(A)-(B).

Here, MNC has failed to cite sufficiently "particular parts of materials in the record" to support its motion for summary judgment requesting dismissal of Bedford's breach of contract

---

[8] *See* Bedford LLC's Answer to Complaint at 6 (explaining "[t]hat if the plaintiff sustained any damages in the manner alleged in the underlying Complaint, such damages were caused in whole or in part by the negligence, and/or breach of contract of codefendants.  By reason of the foregoing, the answering defendant is entitled to contribution and both common law and contractual indemnification, from and to judgment over and against co-defendant in the amount of any excess paid by the answering defendant over and above its equitable share of any judgment recovered by the plaintiff as determined in accordance with the relative culpability of the parties.")

claim.  Therefore, the Court denies MNC's motion for summary judgment based on Bedford's breach of contract claim.

### 7.  Dismissal of RVM's Cross-Claims Against MNC

MNC contends that "RVM's cross-claims for common-law indemnity and contribution against MNC must be dismissed because MNC was not negligent."  MNC's Mem. In Supp. of Mot. Summ. J. ¶ 36.

RVM filed counterclaims against MNC alleging that "[i]f Plaintiff sustained any damages as alleged in the Complaint and/or Second Third-Party Complaint, then any and all damages sustained by Plaintiff were caused by the recklessness, carelessness, negligence and/or other culpable conduct and/or wrongful acts and/or omissions of the agents, servants and/or employees of" MNC.  RVM Answer to Third-Party Compl. ¶ 53.  Moreover, RVM alleged that RVM did not contribute to any active or affirmative negligence or fault by MNC, and that if RVM is found to be liable to MNC, MNC will be liable for "contribution and/or common law indemnification in accordance with the relative degrees of fault or wrongdoing of the parties to this action." *Id.* ¶ 54. Finally, RVM is entitled to indemnification and contribution from MNC for any "excess" RVM pays "over and above its equitable share of the judgment, verdict and/or recovery, as determined in accordance with the relative culpability of each party."  *Id.* ¶¶ 55-56.

As discussed above, whether MNC was negligent is a determination the Court puts to the trier of fact.  Therefore, the Court declines to dismiss RVM's cross-claims against MNC.

### C.  Beford LLC's Motion for Summary Judgment

Bedford moved for summary judgment asking that the Court (1) grant it summary judgment dismissing all of Plaintiff's claims; (2) grant it summary judgment on its contractual indemnity

claim against co-defendant MNC General Contractors Corp.; and (iii) dismiss MNC's cross-claims alleging contribution, common law indemnity and contractual indemnity against 3428 Bedford.

### 1.   Summary Judgment Dismissing All of Plaintiff's Claims

For the aforementioned reasons, Plaintiff's Sec. 241(6) claim based on purported Industrial Code §§ 2.4(c)(2) (§§ 23-1.5(a), 23-1.7(e), 23-1.3, 23-1.16, 23-1.17, 23-1.19, 23-1.22, 23-1.32, 23-2.4(a), 23-2.4(b) and OSHA violations are dismissed.  The Court declines to grant summary judgment dismissing Plaintiff's remaining claims under Sec. 241(6), Sec. 200, and Sec. 240(1).

### 2.   Contractual Indemnity Claim Against MNC

For the reasons mentioned in section B(4)(i), *supra*, because Bedford is entitled to the homeowner exemption, MNC does not need to indemnify Bedford.  So, Bedford's claims for contractual indemnity, common law indemnity, and contribution against MNC are dismissed.

### 3.   MNC's Cross-Claims Alleging Contribution, Common Law Indemnity, and Contractual Indemnity Against 3428 Bedford

The Court dismisses MNC's cross-claim alleging contribution, common law indemnity, and contractual indemnity against 3428 Bedford because the homeowner exemption applies to Bedford therefore Bedford cannot be found negligent.

### CONCLUSION

For the foregoing reasons, the Court rules on the parties' motions for summary judgment as follows:

1) Plaintiff's motion for summary judgment is DENIED.

2) Bedford's motion for summary judgment is GRANTED in part, with respect to Plaintiff's Sec. 240(1) and Sec. 241(6) claims against 3428 Bedford LLC and MNC's cross-claim alleging contribution, common law indemnity and contractual indemnity against 3428 Bedford, such claims against Bedford are DISMISSED.

3) MNC's summary judgment motion is GRANTED in part, with respect to Plaintiff's Sec. 241(6) claim based on industrial code (§§ 23-1.5(a), 23-1.7(e), 23-1.3, 23-1.16, 23-1.17, 23-1.19, 23-1.22, 23-1.32, 23-2.4(a), 23-2.4(b)) and OSHA violations, such claims against MNC are DISMISSED.

**SO ORDERED.**

/s/ Orelia E. Merchant
ORELIA E. MERCHANT
United States District Judge

Dated: September 30, 2024
       Brooklyn, New York